**MANAYUNK DEVELOPMENT CORPORATION, Main Street Restaurant Group, Ltd., d/b/a Kansas City Prime and Amonos Corporation, d/b/a Sonoma, Pennsylvania Corporations,**

v.

### PENNSYLVANIA LIQUOR CONTROL BOARD.

**Appeal of CAFÉ ZESTY, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 6, 1998.
Decided May 29, 1998.
Publication Ordered Aug. 7, 1998.

Gary F. DiVito, Philadelphia, for appellant.

Roxanne Galeota, Philadelphia, for appellees.

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Café Zesty appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) which reversed a decision of the Pennsylvania Liquor Control Board (Board) granting Café Zesty's application for extension of its license to cover additional premises.

Café Zesty is a restaurant located at 4376–84 Main Street in the Manayunk section of Philadelphia. On August 24, 1995, Café Zesty filed an application to expand its liquor license to include the second floor of its building. The Main Street Restaurant Group and the Amonos Corporation, which own and operate restaurants within 200 feet of Café Zesty, filed a protest. A petition to intervene opposing the application was filed by the Manayunk Development Corporation (MDC), a non-profit corporation which represents residents and businesses in the Manayunk area.

At the hearing before a hearing examiner for the Board, testimony was presented from a Philadelphia police officer who patrols the area by bicycle; a resident of the area who is also the executive director of MDC; the co-owner of two restaurants protesting Café Zesty's application; and the state legislator representing the district. Café Zesty presented no testimony at the hearing. On May 29, 1996, the Board issued a decision approving the extension of the license. MDC, Main Street Restaurant Group and Amonos Corporation (collectively, Objectors) appealed the Board's decision to the trial court. Café Zesty and the Board moved to quash the appeal on the basis that Objectors lacked standing to appeal the Board's decision. The trial court held a hearing on the issue of standing and denied the motion to quash. The trial court then held a *de novo* hearing on the appeal.

At the hearing, Protestants presented the testimony of the City council person representing the district in which Café Zesty is located; a consulting civil engineer who prepared a traffic and parking study; the custodian or records of the City Department of Licenses and Inspections; a resident of the immediate area; an architect and city planner; and, a resident of the immediate area who is also a member of MDC. Café Zesty presented the testimony of the principal operator of the restaurant and the testimony of two patrons of the restaurant. Following the hearing, the trial court issued an opinion in which it found that the expansion of Café Zesty's liquor license would be detrimental to the welfare, health, peace and morals of the residents within 500 feet of the premises. The trial court specifically found: The expansion of the liquor license "would attract more customers to the restaurant, customers who would most likely drive to Manayunk from surrounding areas and, similarly, park in Manayunk. This will exacerbate the existing traffic and parking problems in Manayunk. The Court finds that this constitutes a detriment to the welfare of the neighborhood's inhabitants." (Trial Court Opinion, pp. 12–13.) Accordingly, the trial court reversed the decision of the Board and ordered the Board to deny the application for expansion. Café Zesty now appeals to this Court.

■ On appeal, Café Zesty argues that the trial court erred (1) in denying its motion to quash the appeal of MDC for lack of standing and (2) in finding that the grant of the expansion of the liquor license was detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood within a radius of 500 feet. Because the trial court conducted its own evidentiary hearing and issued its own findings of fact, our scope of review is limited to a determination of whether there is substantial evidence to support the trial court's findings of fact, whether the trial court abused its discretion or whether it committed an error of law. *McGonigel's Inc. v. Pennsylvania Liquor Control Board,* 663 A.2d 890 (Pa.Cmwlth.1995).

■ We first consider Café Zesty's argument that the trial court erred in denying its motion to quash. Section 464 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4-464, sets forth the specific classes of persons and institutions permitted to appeal from the Board's deter-

mination to grant, refuse, renew or transfer a license:

> Any applicant who has appeared at any hearing ... who is aggrieved by the refusal of the board to issue any such license or to renew or transfer any such license ... may appeal, or any church, hospital, charitable institution, school or public playground located within three hundred feet of the premises applied for, aggrieved by the action of the board in granting the issuance of any such license or the transfer of any such license, may take an appeal limited to the question of such grievance, within twenty days from the date of refusal or grant, to the court of common pleas of the county in which the premises or permit applied for is located.

Additionally, inhabitants of the neighborhood within 500 feet of an establishment which has successfully sought a license have been granted standing to appeal on the basis of Section 404 of the Liquor Code, 47 P.S. § 4–404 *Application of El Rancho Grande, Inc.,* 496 Pa. 496, 437 A.2d 1150 (1981). That section sets forth the circumstances in which the Board may grant an application for a hotel, restaurant or club liquor license, with the following relevant provisions:

> Provided, however, That in the case of any new license or the transfer of any license to a new location the board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground, or if such new license or transfer is applied for a plaque which is within two hundred feet of another premises which is licensed by the board, or if such new license or transfer is applied for a place where the principal business is the sale of liquid fuels and oil: And provided further, That the board shall refuse any application for a new license or the transfer of any license to a new location if, in the board's opinion, such new license or transfer would be detrimental to the welfare, health, peace and moral of the inhabitants of the neighborhood within a radius of five hundred feet of the place proposed to be licensed.

This Court has stated that while there is no specific statutory section in the Liquor Code governing extensions of existing licenses, the provisions of Section 404 are broad enough to include extensions. *Ulana, Ltd. v. Pennsylvania Liquor Control Board,* 86 Pa.Cmwlth. 345, 484 A.2d 859, (1984).

Café Zesty argues that MDC is not a church, hospital, charitable institution, school, or public playground located with 300 feet of the proposed expansion of the liquor license, nor is it an inhabitant within 500 feet of Café Zesty, therefore it does not have standing under the Liquor Code to take an appeal to the trial court. Café Zesty also argues that MDC's petition to intervene failed to set forth facts which would meet the criteria established by this Court in *Tacony Civic Ass'n v. Pennsylvania Liquor Control Board,* 668 A.2d 584 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 545 Pa. 666, 681 A.2d 180 (1996).

In *Tacony,* a civic association and an historical society argued that they had standing under Section 404 of the Liquor Code to appeal a liquor license transfer because members of their organizations resided within 500 feet of the applicant. On appeal, this Court noted that although these organizations claimed both before the Board and the trial court, that many of its members resided within 500 feet of the applicant, no such individuals filed protests with the Board, testified at the Board hearing or appealed the Board's decision to the trial court. The Court stated that an organization cannot bring itself within the provisions of Section 404 of the Liquor Code merely by claiming that it has individual members who live within 500 feet of the proposed licensed premises.

In the case before us, Kathryn Smith, Executive Director of MDC, testified before the Board that she lives within 500 feet of Café Zesty. She testified both in her capacity of executive director of MDC and as a resident of the immediate area. Café Zesty contends that Smith's testimony is insufficient under *Tacony* to confer standing on MDC because Smith did not have protestant status, did not file an appeal from the Board's decision in her own right, and was not identified as a party in the petition for review filed by

MDC. We disagree. In *Tacony*, the organizations presented no testimony from residents who lived within 500 feet of the applicant. In the case before us, MDC offered the testimony of Smith, a resident living within 500 feet of Café Zesty. The facts of the case before us are therefore distinguishable from that facts presented in *Tacony*. Therefore Café Zesty's reliance on *Tacony* is inapposite. Because MDC established that it had a member, living within 500 feet of Café Zesty, the trial court did not err in denying Café Zesty's motion to quash.

The standing issue in this case is similar to the issue in the recently decided case involving MDC. In *Manayunk Development Corp. v. Pennsylvania Liquor Control Board,* 699 A.2d 1373 (Pa.Cmwlth.1997), A & J Main, Incorporated filed an application for a double transfer for a restaurant liquor license to premises where A & J was operating a restaurant in the Manayunk section of Philadelphia. The Board granted MDC intervenor status in the proceedings. Katherine Smith testified before the Board as an individual protestant in her own right. The Board granted the application and MDC appealed to the trial court. A & J filed a motion to quash the appeal. The trial court addressed the issue as follows:

> The Pennsylvania Liquor Control Board granted the Appellant, Manayunk Development Corporation, intervenor status in the proceedings below. Ms. Smith testified below as an individual protestant in her own right, but did not appeal the PLCB's decision because the Development Corporation had been permitted to intervene by the PLCB and was appealing the decision. To grant the motion to quash and/or dismiss the appeal as to both Manayunk Development Corporation and Kathryn Smith would preclude the community and residents from having an effective voice as required under § 4–402 of the Liquor Code [47 P.S. § 4–402]. Therefore, the Court denies the motion to quash. The Court would also note that the applicant did not appeal the granting of the intervenor status to the Manayunk Development Corporation and therefore should be viewed as waiving said objection. Counsel for the Board in this action does not raise

such an objection, since Ms. Coward, at the hearing below, had supported the Development Corporation's standing to protest the application and appeal at the PLCB hearing.

(Trial Court Opinion of May 9, 1996, p. 2.) On appeal, A & J argued, *inter alia,* that the trial court erred in denying its motion to quash and/or dismiss MDC's appeal. This Court stated:

> The trial court determined that the standing issue was waived by A & J because neither A & J nor the Liquor Control Board objected to Manayunk's intervention below. Even assuming no waiver of this issue, A & J failed to show that Manayunk did not have members within 500 feet of the proposed premises who would suffer direct and substantial harm if the license transfer were allowed, notwithstanding A & J's reliance upon *Tacony Civic Ass'n v. Pennsylvania Liquor Control Board,* 668 A.2d 584 (Pa.Cmwlth.1995), *appeal denied,* 545 Pa. 666, 681 A.2d 180 (1996).

*Id.* at 1375 n. 1. This Court held that the decision of the trial court to deny the motion was correct. The Court affirmed the order of the trial court and adopted the opinion of the trial court.

Café Zesty next argues that the trial court's finding, that the extension of the liquor license would be detrimental to the welfare, health, peace and morals of the inhabitants of the neighborhood, is not supported by substantial evidence. Café Zesty argues that the testimony offered by Objectors was conjectural and speculative. Café Zesty relies on *Manns Liquor License Case,* 207 Pa.Super. 340, 217 A.2d 848 (1966), for the proposition that possible future misconduct of a licensed establishment or the fear that the establishment would bring undesirable patrons into the neighborhood is not a sufficient basis on which to deny a license application.

▉ At the hearing before the trial court, Michael Nutter, City Council person representing the Manayunk commercial area testified, on behalf of the protestants, as to the efforts City Council has made to control parking in the area. Nutter testified that

the City bought land to use as a parking lot and has made other City-owned land available for parking. Additionally, the City has hired an outside firm to conduct a parking and traffic study and offer the City advice on what steps can be taken to encourage the business environment but not negatively impact the nearby residents.

The protestants also presented the testimony of Elmore Boles, a consulting civil engineer whose firm performed the traffic and parking study. According to the study, there is a restaurant-tavern seating occupancy of approximately 3000 in the area. The number of parking spaces existing in MDC lots, privately owned facilities and on-street parking, excluding residential areas is approximately 1000. Boles testified that two of the lots are underutilized because they are remote from most of the major restaurants in the area and they are difficult to access. Boles further testified that rather than park in those lots, cars cruise in the residential areas looking for free parking, causing traffic congestion.

Also testifying was a resident of the immediate area who testified that she is often unable to park her car within a two-block radius of her house. She also stated that people who are looking for a parking space in the residential area often do not stop fully at stop signs and proceed down the street at a high rate of speed. The protestants also presented testimony from Gray Smith, an architect and urban planner. Smith testified, based on City Planning Commission data and on his experience as an urban planner, he did an analysis of the weekend parking space demand relative to the restaurants on and adjacent to Main Street in the Manayunk area. Smith testified that there was demand for 1593 parking spaces for Main Street visitors but that there were only 938 legal parking spaces available. Smith stated that any additional seating capacity for restaurants with liquor licenses will increase the demand for parking spaces during peak hours and enlarge the deficit of parking spaces that already exists.

The testimony presented before the trial court is sufficient to establish that there is insufficient parking in the area surrounding the commercial district, that the residential area is presently affected by the lack of parking and that an increase in the seating capacity of a restaurant with a liquor license would further exacerbate the existing problem. Accordingly, the trial court's finding, that the expansion of Café Zesty's liquor license would be detrimental to the welfare, health, peace and morals of the residents within 500 feet of the premises, is supported by substantial evidence.

The order of the trial court is affirmed.

### ORDER

AND NOW, this 29th day of May, 1998, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby affirmed.